IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KATHRYN A. BENNETT,

        Plaintiff,
  vs.                                Civil Action 2:12-CV-07
                                        Judge Frost
                                        Magistrate Judge King

MICHAEL J. ASTRUE, Commissioner
of Social Security,

        Defendant.

## REPORT AND RECOMMENDATION

### I.
### Introduction and Background

    This is an action instituted under the provisions of 42 U.S.C. §405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for disability insurance benefits. This matter is now before the Court on plaintiff's *Statement of Errors*, Doc. No. 12, and the Commissioner's *Memorandum in Opposition*, Doc. No. 13.

    Plaintiff Kathryn A. Bennett filed her application for benefits on January 8, 2008, alleging that she has been disabled since December 15, 2006, as a result of alopecia, eczema, tinnitus, chronic fatigue syndrome, posttraumatic stress disorder ("PSTD"), joint pain, migraines and insomnia. *PageID* 234. The application was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

    A hearing was held on September 13, 2010, at which plaintiff, represented by counsel, appeared and testified as did

1

Bruce S. Growick, who testified as a vocational expert. In a decision dated November 15, 2010, the administrative law judge found that, despite her severe impairments, plaintiff has the residual functional capacity to perform work that exists in significant numbers in the national economy. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act. *PageID* 124-33. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on November 16, 2011. *PageID* 59-62.

Plaintiff was 44 years of age at the time the administrative law judge issued his decision. She has a high school education, *PageID* 240, and past relevant work experience as a cashier/waitress, picker/packer, material handler, assembler and machine operator. *PageID* 235, 253-64. She also served in the United States Army, including service during the Gulf War as a combat medic. *PageID* 249, 337.

Plaintiff testified at the administrative hearing that she last worked in December 2006. *PageID* 80. She attempted – without success – to find new employment after having been laid off, but eventually concluded that she could not "do the things I used to do." *PageID* 81.

Plaintiff believes that she is disabled by migraine headaches, which she experiences 2 to 3 times per week and which are associated with vomiting. *PageID* 82-83, 101-02. She also suffers from chronic fatigue syndrome. *PageID* 83-85. She has constant aches and feels physically and emotionally drained. *PageID* 99-100. Her PTSD, hearing loss and tinnitus, and sinus allergies also prevent her from working. *PageID* 83. Her PTSD, which she attributes to her war experiences, causes insomnia, flashbacks and nightmares and significantly impacts her daily functioning. *PageID* 84, 91.  She is unable to focus or to

concentrate. *PageID* 97, 100, 103-04. Her war experiences also caused hearing loss and tinnitus. *PageID* 104. Plaintiff also testified to joint pain in her ankles, knees, wrists and elbows; pain in her hips and shoulders is increasing. *PageID* 85.

Plaintiff cares for the four children who still live at home and for pets. Although she can prepare food and perform household chores, *PageID* 84-85, she is sometimes so exhausted that she then sleeps until the children return from school. PageID 85. She can no longer mow the lawn. She cannot stand or sit for long periods of time without becoming fatigued or suffering an aggravation of her pain. *PageID* 89-90.

The vocational expert was asked to assume a claimant with plaintiff's vocational profile and the residual functional capacity for a reduced range of light work. In response, the vocational expert testified that such a claimant could not perform plaintiff's past relevant work but could perform such jobs as machine tender, bench assembler and quality assurance inspector. *PageID* 112.

## II.
### The Medical Evidence of Record.

Plaintiff was treated at Veteran's Administration ("VA") health facilities from August 2003 through January 2009, *PageID* 388-518; 541-77; 605-22; 639-59, for various conditions, including PTSD, dysthymic disorder, depressive disorder, nicotine dependence, migraine headaches, dermatitis, acute eczema, tinnitus, joint effusion at multiple sites, hair loss, conjunctivitis, personal history of exposure to Persian Gulf region and allergic rhinitis. *Id.*

In May 2004, *i.e.*, prior to plaintiff's alleged December 2006 disability onset date, plaintiff presented to an emergency

3

room with complaints of migraine headache with nausea. Phenergan and Vicodin were administered. *PageID* 379-81.

In June 2006, plaintiff was evaluated by VA psychiatrist Ernesto Castillo, M.D. *PageID* 452-53. Plaintiff reported recurring nightmares with increasing frequency and increasing anger issues. She was depressed and lacked energy; she had difficulty staying focused and had lost interest in activities. Dr. Castillo noted an appropriate affect and no evidence of hallucinations or delusions. Speech was normal and plaintiff was oriented in all spheres with good memory. Dr. Castillo diagnosed PTSD and dysthymic disorder and assigned plaintiff a Global Assessment of Functioning ("GAF") score of 65, which is indicative of only mild dysfunction. She was prescribed Citalopram. *PageID* 453. In July 2006, plaintiff reported one weekly nightmare, reduced conflict with her husband and improvement with medication. Trenton Fraley, a social worker, diagnosed PTSD, depressive disorder, NOS, and nicotine dependence. Plaintiff's GAF score was listed as 60. *PageID* 416.

In September 2006, plaintiff reported to VA psychiatrist John Bartz, M.D., that she felt calmer and was having only 1-2 nightmares per week since she started Citalopram. She rated her pain at zero on a ten-point scale. Dr. Bartz diagnosed PTSD, depressive disorder, NOS, nicotine dependence, alcohol dependence, in remission, cannabis abuse, in remission and cocaine abuse, in remission. Plaintiff's GAF score was 60. *PageID* 445. Dr. Bartz adjusted plaintiff's medication. *Id.*

As noted *supra*, plaintiff alleges that she became disabled in December 2006.

When seen by Dr. Bartz in May 2007, plaintiff was alert, pleasant and cooperative. Her affect was euthymic, her speech

4

was normal and she was oriented x3. Plaintiff reported that she felt calmer and was less irritable. *PageID* 403-05.

Plaintiff presented to an emergency room in July 2007 with chest pain after moving heavy furniture. The pain resolved. *PageID* 366. Her physical and psychiatric examinations were normal. *PageID* 367, 371. She was oriented x3 and had a normal affect with normal speech.

State agency psychologist Marianne Collins, Ph.D., reviewed the file in March 2008 and evaluated plaintiff's mental impairments by reference to Listing 12.04 (affective disorders), 12.06 (anxiety-related disorders) and 12.09 (substance addiction disorders) and concluded that plaintiff's documented mental impairments neither met nor equaled any listing. *PageID* 521. In considering the "B" criteria of the listings, Dr. Collins opined that plaintiff had mild limitations in her activities of daily living and had moderate restrictions in her social functioning and in her ability to maintain concentration, persistence or pace. *PageID* 531. Dr. Collins indicated that the evidence did not establish the presence of the "C" criteria. *PageID* 532. According to Dr. Collins, plaintiff could perform simple to moderately complex tasks with limited social interaction and no strict production quotas. *PageID* 537. In August 2008, state agency psychologist Todd Finnerty, Psy.D., reviewed the record and affirmed Dr. Collins' opinion. *PageID* 539.

In August 2008, plaintiff reported to VA psychiatrist James Oaks, M.D., that her PTSD had worsened without treatment. *PageID* 564-57. She got along well with family and friends but was stressed by child rearing. Plaintiff reported minimal anhedonia, depressed mood, feeling constantly fatigued and nervous when stressed. *PageID* 502. She also complained of pain, rating her pain in her back, ankles, knees and elbows at four on a ten-point

scale.  Dr. Oaks diagnosed a depressive disorder, NOS (primary diagnosis), and PTSD. He assigned a GAF score of 60. *PageID*  566. Plaintiff's medications were reconciled and she was instructed to follow-up in 6 weeks. *Id.*

In October 2008, Mark E. Weaver, M.D., performed a consultative evaluation of plaintiff at the request of the state agency. *PageID* 578-86.  Plaintiff walked with a stiffened, symmetric gait. She complained of pain in both ankles and knees after sitting or standing ten minutes. She used no ambulatory aides or braces. She did not become short of breath after walking forty feet up and down the hallway or after performing physical activities. Musculoskeletal examination showed diffuse tenderness to palpation and some crepitus in the ankles, knees and elbows with active motion. Strength testing showed ratchety giving way with pain inhibition in all muscle groups of both lower extremities and in the proximal upper extremities. Inspection of the hands bilaterally showed no swelling, discoloration or gross deformities and no intrinsic muscle spasm or atrophy. There was no tenderness to palpation in the cervical, thoracic or lumbar areas. Active motion of the neck and dorso-lumbar spine was normal. According to Dr. Weaver, plaintiff exhibited a somewhat nervous, anxious affect through the entire examination.  She was oriented x 3 and was able to recall four out of four objects in the exam room after fifteen minutes. She was able to follow all directions readily.  According to Dr. Weaver, plaintiff would "probably" be limited in the performance of physical activities involving sustained sitting, standing, walking, climbing, reaching, squatting, stooping, crouching, kneeling, crawling, lifting and carrying.  She would also be limited in environments requiring extensive social interaction and interpersonal communication. *PageID* 582. Plaintiff could perform "physical

activities involving handling objects, hearing, speaking, following directions and travel in environments that would allow her the opportunity to change positions from sitting to standing and vice versa periodically as needed." *Id.*

Paul Knight, M.D. tested plaintiff's pulmonary function on behalf of the state agency in October 2008. *PageID* 587-96. According to Dr. Knight, plaintiff's levels were at the "very lowest limit of normal" and she had mild obstruction. *PageID* 589.

In November 2008, the record was reviewed by state agency physician Maria Congbalay, M.D., who opined that plaintiff could lift 50 pounds occasionally and 25 pounds frequently, could stand and/or walk for six hours in an eight-hour workday, and could sit for six hours in an eight-hour workday with a sit/stand option. *PageID* 598. Plaintiff could frequently climb ramps and stairs, kneel, crouch and crawl; she could occasionally climb ladders, ropes and scaffolds. *PageID* 599. According to Dr. Congbalay, plaintiff should avoid concentrated exposure to respiratory irritants. *PageID* 601. Dr. Congbalay found that plaintiff's allegations were partially credible. *PageID* 602.

Plaintiff was seen again by Dr. Oaks in January 2009. *PageID* 614-16. She felt that her condition had not improved since her August 2008 visit, although she did not explain why she had not followed up as directed. Recent stressors included marital fracture and her mother's illness. She had discontinued some of her medication. Plaintiff reported irritability and sleep disorders alternating between insomnia and hypersomnia (which she attributed to "chronic fatigue syndrome.") Plaintiff also complained of increased pain, which she rated at four on a ten-point scale. *PageID* 615. Plaintiff reported that she performed crafts as a leisure activity. *Id.* On mental status examination, plaintiff's mood was disgruntled, her affect was mood-congruent

and mildly restricted, her judgment was intact and her insight was limited. Plaintiff's diagnoses remained depressive disorder and history of PTSD, as did her GAF score of 60. *Id.* Dr. Oaks increased plaintiff's medication.

On July 29, 2010, Keli Yee, Ph.D., performed a consultative psychological evaluation at the request of a county welfare agency. *PageID* 624-32. Plaintiff reported depression, anxiety, flashbacks, nightmares and hypervigilance; she was easily frustrated. Dr. Yee noted problems with reduced attention/concentration and persistence with tasks. Plaintiff had not taken anti-depressant medication for three weeks prior to this assessment, and plaintiff noted changes in her mood. Plaintiff's hobbies were listed as painting ceramics and attending movies. *PageID* 627. Her memory was normal. *Id*. Dr. Yee diagnosed PTSD and mood disorder, NOS. *PageID* 568. According to Dr. Yee, plaintiff was

> a poor candidate to return to work due to multiple return to work obstacles to include medical and psychological. Her current mood symptoms are chronic in nature, and are not currently being monitored or managed. Due to poor attention, concentration, and moods, she is a poor candidate for any vocational assistance at this time. She appears to be a better candidate for a longer term disability type program.

*PageID* 631. Dr. Yee also completed a mental functional capacity assessment in which she found that plaintiff had no significant limitations in eleven areas of functioning, moderate limitations in eight areas, and a marked limitation in her ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *PageID* 623.

Plaintiff underwent a functional capacity evaluation at a VA facility in August and September 2010. *PageID* 640-43, 651-59.

Plaintiff could lift ten pounds frequently and twenty pounds occasionally, could sit for thirty-five minutes at a time, could stand for seven minutes at a time, could walk for six minutes at a time and could balance normally. *PageID* 657-59. She had low grip strength and had difficulty with kneeling, squatting and crawling. *PageID* 658. The therapist concluded that plaintiff "may be more suited to sedentary tasks due to limited standing tolerance." *Id.*

In November 2008, the VA found that plaintiff was 10% disabled based on her PTSD and 10% disabled based on her joint pain. *PageID* 661-62. *Id.*

### III.

### Administrative Decision

In his decision, the administrative law judge found that plaintiff's severe impairments consist of chronic fatigue syndrome (CFS); posttraumatic stress disorder (PTSD); history of migraine headaches; and poly-substance abuse in partial remission, but that plaintiff does not have "an impairment or combination of impairments" that meets or equals a listed impairment. *PageID* 126. According to the administrative law judge, plaintiff has the residual functional capacity to perform light work except that she could not perform work that requires her to stand, sit and/or walk for more than 6 hours in an eight-hour workday. *Id.* She could frequently kneel, crouch, crawl, and/or use stairs but could only occasionally use ladders. *Id.* Mentally, the administrative law judge found that plaintiff could not perform fast-paced work or work that requires her to perform strict, time-related tasks. *Id.* She could not perform work that requires more than superficial contact with coworkers, or work that requires more than occasional changes in setting or assignments. *Id.*

*Id.* Relying on the vocational expert's testimony, the administrative law judge found that this residual functional capacity precluded the performance of plaintiff's past relevant work but would permit the performance of jobs that exist in significant numbers in the national economy. *PageID* 132-33. Accordingly, the administrative law judge concluded that plaintiff is not disabled within the meaning of the Social Security Act. *PageID* 133.

## V.

### DISCUSSION

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Secretary of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial

evidence also supports the opposite conclusion. *Longworth v. Comm'r Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005).

In her *Statement of Errors*, plaintiff contends that the administrative law judge should have found that plaintiff's posttraumatic stress disorder meets Listing 12.04. Doc. No. 12, at *PageID* 666. Plaintiff also contends that the administrative law judge failed to evaluate the combination of plaintiff's impairments. *Id.* at *PageID* 671. Finally, according to plaintiff, the administrative law judge should have secured the testimony of a medical expert. *Id.* at *PageID* 672.

The administrative law judge expressly found that plaintiff's mental impairments do not meet or equal, *inter alia*, Listing 12.04. *Page ID* 126-28. The administrative law judge specifically found that plaintiff's impairments do not satisfy the "B" criteria of the Listing because her mental impairments "do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration . . . ." *Page ID* 127. In making these findings, the administrative law judge referred to evidence in the record and those findings enjoy substantial support in the record. Moreover, the state agency psychologists who reviewed the record and to whose opinions the administrative law judge gave "significant weight," *Page ID* 131, also concluded that plaintiff's mental impairments neither met nor equaled Listing 12.04. *See Page ID* 521, 539. Under these circumstances, the Court concludes that the administrative law judge did not err in this regard. The fact that the record also contains evidence in support of plaintiff's claim does not, of course, require a different conclusion. *See Longworth*, 402 F.3d at 595.

The Court also concludes that plaintiff's second challenge to the decision of the administrative law judge is without merit.

The administrative law judge expressly referred to the "combination of [plaintiff's] impairments," *Page ID* 126, and therefore met his obligation in this regard. *See Loy v. Sec'y of Health & Human Servs.*, 901 F. 2d 1306 (6th Cir. 1990).

Finally, the administrative law judge did not err in failing to secure the testimony of a medical expert at the administrative hearing. Plaintiff contends that the administrative law judge "did not know all the facts pertaining to the Plaintiff's mental health impairments and should have had a medical expert, as opposed to using his own lay opinion." *Statement of Errors, Page ID* 672. Plaintiff also appears to contend that the administrative law judge should have retained the services of a medical expert in connection with his consideration of the Listing of Impairments. *Id., Page ID* 673. An administrative law judge "has discretion to determine whether further evidence, such as additional testing or exprt testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001)(citing 20 C.F.R. §§ 404.1517; 416.917). As noted *supra*, state agency psychologists evaluated plaintiff's mental impairments by reference to the Listing of Impairments. The record reflects sufficient evidence of plaintiff's impairments and the effects of those impairments on plaintiff's residual functional capacity. It cannot be said that the administrative law judge relied on his own lay opinion in evaluating the evidence. It follows that the administrative law judge did not err in failing to secure the testimony of a medical expert in this regard.

In sum, the Court concludes that the administrative law judge applied all appropriate standards and his findings enjoy substantial support in the record.

It is therefore **RECOMMENDED** that the decision of the Commissioner of Social Security be affirmed and that this action be dismissed.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

Date: February 4, 2013               *s/Norah McCann King*
                                     Norah McCann King
                                     United States Magistrate Judge

13

Case: 2:12-cv-00007-GLF-NMK Doc #: 15 Filed: 02/04/13 Page: 14 of 14  PAGEID #: 704